1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8

9    Connie Rice,                        )    No. CIV-04-2133-PHX-MHM
                                         )
10              Plaintiff,               )    **ORDER**
                                         )
11   vs.                                 )
                                         )
12                                       )
     Commissioner    of   Social   Security)
13   Administration,                     )
                                         )
14              Defendant.               )
                                         )
15   _____ )

16

17          Plaintiff Connie Rice seeks judicial review of the Administrative Law Judge's ("ALJ")

18   decision denying her claim for disability insurance benefits.  42 U.S.C. § 405(g).

19                                  **I.**

20                         **Procedural History**

21          Plaintiff filed an application for Disability Insurance Benefits under Title II of the

22   Social Security Act wherein she alleged an onset date of December 31, 1995.   She

23   subsequently amended her onset date to May 15, 2000.   Plaintiff was last insured for

24   Disability Insurance Benefits on December 31, 2000.[1]   Plaintiff's application was denied

25

26   _____

27          [1]In order to qualify for Social Security Disability benefits, a person must be both
     disabled and insured for disability benefits.  42 U.S.C. § 423(a)(1)(A) and (c); 20 C.F.R. §
     404.101, § 404.120, and § 404.315(a).  A claimant must demonstrate onset of disability on
28   or before the date last insured ("DLI") in order to qualify for Social Security Disability

1  initially and on reconsideration.   After a hearing on June 7, 2002, the Administrative Law

2  Judge ("ALJ") issued a decision on September 26, 2002, finding that Plaintiff was not

3  disabled within the meaning of the Act.   The Appeals Council did not grant Plaintiff's

4  request for review and the decision became final.  Plaintiff commenced an action for review

5  in this Court pursuant to 42 U.S.C. § 405(g).  Based on the parties' joint stipulation, the

6  Court ordered the case remanded for further administrative proceedings.  On remand the ALJ

7  was instructed to obtain additional evidence and reconsider, with the additional evidence,

8  whether Plaintiff had a severe impairment prior to December 31, 2000, her DLI.   A second

9  hearing was held on December 10, 2003.  The Administrative Law Judge issued a decision

10 dated February 23, 2004, concluding that Plaintiff was not disabled within the meaning of

11 the Act.  The Appeals Council did not grant Plaintiff's request for review and the decision

12 became the final decision of the Commissioner of Social Security.

13      Plaintiff timely filed a complaint for judicial review in this Court. (Doc.1).  Plaintiff

14 has filed a motion for summary judgment supported by a statement of facts and memorandum

15 of points and authorities. (Doc. 6).  Defendant has filed a cross- motion for summary

16 judgment supported by a statement of facts and memorandum of points and authorities.

17 (Doc. 7-9).  The issues have been fully briefed and are ready for decision.

18                                          **II.**

19                              **Standard of Review**

20      This Court must affirm the ALJ's findings if they are supported by substantial

21 evidence and free from reversible legal error.  Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir.

22 1990).  Substantial evidence means "more than a mere scintilla" and "such relevant evidence

23 as a reasonable mind might accept as adequate to support a conclusion."  Richardson v.

24 Perales, 402 U.S. 389, 401 (1971); Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990).

25      In determining whether substantial evidence supports a decision, the Court considers

26 the record as a whole.  Richardson, 402 U.S. at 401; Tylitzki v. Shalala, 999 F.2d 1411, 1413

27 _____

28 benefits.

1   (9th Cir. 1993). If there is sufficient evidence to support the ALJ's determination, the Court

2   cannot substitute its own determination. <u>Young v. Sullivan</u>, 911 F.2d 180, 184 (9th Cir.

3   1990). Where evidence is inconclusive, "questions of credibility and resolution of conflicts

4   in the testimony are functions solely of the [Commissioner]." <u>Sample v. Schweiker</u>, 694 F.2d

5   639, 642 (9th Cir. 1982). Therefore, if on the whole record before the Court, substantial

6   evidence supports the Commissioner's decisions, this Court must affirm. <u>Hammock v.</u>

7   <u>Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989); 42 U.S.C. § 405(g).

8          An ALJ determines an applicant's eligibility for disability benefits through the

9   following five stages:

10          (1)   determine whether the applicant is engaged in "substantial gainful
                  activity";

11

12          (2)   determine whether the applicant has a "medically severe impairment or
                  combination of impairments";

13          (3)   determine whether the applicant's impairment equals one of a number
                  of listed impairments that the Commissioner acknowledges as so severe

14                as to preclude the applicant from engaging in substantial gainful
                  activity;

15

16          (4)   if the applicant's impairment does not equal one of the "listed
                  impairments," determine whether the applicant is capable of performing
                  his or her past relevant work;

17

18          (5)   if the applicant is not capable of performing his or her past relevant
                  work, determine whether the applicant "is able to perform other work

19                in the national economy in view of his [or her] age, education, and
                  work experience."

20   <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-41 (1987) (citing 20 C.F.R. §§ 404.1520(b)-(f)). See

21   20 C.F.R. § 416.920. At the fifth stage, the burden of proof shifts to the Commissioner.

22   <u>Penny v. Sullivan</u>, 2 F.3d 953, 956 (9th Cir. 1993).

23                                      **III.**

24                              **Background Facts**

25          Plaintiff was 49 years of age at the time of her "date last insured" ("DLI"), December

26   31, 2000. Plaintiff alleged she was disabled due to hyperglycemia, degenerative heart

27   disease, liver failure, high blood pressure, asthma, cholesterol, and degenerative disc disease.

28   Plaintiff began seeking treatment for her back condition with D. McGuire, D.C. Plaintiff

                                        - 3 -

1 claimed to have sought treatment with D. McGuire, D.C. through the end of 2000.

2 Chiropractic medical records prepared between May 2000 and November 2000 showed

3 Plaintiff's favorable response to conservative treatment modalities, including working out

4 at a gym.  The records also showed several missed or rescheduled visits.

5      Medical records from Deborah Hudak, M.D., dated between October 2000 and March

6 2001 did not mention any back problems in the evaluations Dr. Hudak conducted prior to

7 January 2001.  Dr. Hudak interpreted an X-ray examination study in a report dated January

8 26, 2001.   Under the objective portion of her evaluation Dr. Hudak wrote "severe"

9 degenerative changes "L4-5 with reduced foramina openings at L3-4, L4-5 and L5-S1 "via

10 x-rays." There were no other medical records for the relevant period from May 14, 2000

11 through December 31, 2000.

12 <u>The Hearing Testimony</u>.

13      Plaintiff testified that she had low back pain with bilateral radicular symptoms in both

14 legs, carpal tunnel syndrome, asthma, hepatitis C, diabetes, and vision problems.   She

15 testified that her pain was between five and eight on a scale of one to ten.   Plaintiff testified

16 that the problems she was experiencing in 2002 that resulted in testing being performed in

17 that calendar year were the same problems she was experiencing at the end of 2000, but that

18 at the time she had not been able to get appropriate diagnostic testing performed.

19      The ALJ requested testimony from Irvin S. Belzer, M.D.  Dr. Belzer testified that he

20 had read the medical evidence submitted in the case and that there was no evidence "dating

21 back to ... December, 2000 of severe, objective evidence of impairment."  (Tr. at pp. 280,

22 282). Upon examination by Plaintiff's counsel, Dr. Belzer testified that it was not medically

23 unreasonable that the findings on the chart note dated January 26, 2001 would have been the

24 same as of December 30, 2000. (<u>id</u>., at p. 284).  Dr. Belzer further testified that in one month

25 there would not have been significant changes on the X-rays.  (Tr. at p. 283).

26 <u>The ALJ's Conclusions</u>.

27      The ALJ pointed out that the X-rays that allegedly supported Dr. Hudak's January 26,

28 2001 chart note were not part of the administrative record.  The ALJ also pointed out that Dr.

Hudak did not reference any back problems in any of the evaluations she conducted prior to January 2001. The ALJ characterized Dr. Hudak's use of the term "severe" as medically descriptive rather than consistent with how the term is defined or utilized in the Social Security Act. The ALJ further noted that Plaintiff's chiropractic medical records showed a favorable response to conservative treatment modalities such as working out at a gym. The ALJ mentioned Plaintiff's multiple canceled, rescheduled and missed chiropractic appointments.

The ALJ found that Plaintiff had not performed substantial gainful activity since her alleged onset date. The ALJ found that Plaintiff had the following medically determinable impairments: alcohol dependence and back pain, but that she did not have any impairment or combination of impairments that significantly limited her ability to perform basic work-related activities on or before December 31, 2000. Plaintiff therefore did not have "severe" impairment. The ALJ concluded that Plaintiff was not disabled within the meaning of the Act.

**IV.**

**Discussion**

Plaintiff contends that the ALJ has misinterpreted the evidence and that the ALJ's conclusion that she does not have a medically severe impairment should be reversed. Plaintiff further contends that the ALJ did not follow the remand directive to have medical expert testimony to determine if she had a severe impairment prior to December 31, 2000.

To be found disabled at step two of the sequential evaluation process, an individual must have a medically determinable "severe" impairment. 20 C.F.R. § 404.1520(a)(4)(ii) and (c). An impairment or combination of impairments is not "severe" if it does not significantly limit a claimant's physical or mental ability to do basic work activities such as sitting, standing, walking, lifting and bending and carrying out simple instructions and responding appropriately to supervisors, co-workers, and usual work situations. 20 C.F.R. §§ 404.1520(c) and 404.1521.

1    Plaintiff bears the burden of showing that she has a severe impairment. 20 C.F.R. §

2    404.1520; Bowen, 482 U.S. at 146 & n.5 (["t]he Secretary ... has express statutory authority

3    to place the burden of showing a medically determinable impairment on the claimant");

4    Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). Plaintiff also bears the burden of proving

5    that she became disabled on or before her DLI. See, Flaten v. Secretary of HHS, 44 F.3d

6    1453, 1461 n.4 (9th Cir. 1995).[2]   Plaintiff is responsible for providing medical evidence

7    showing an impairment and its severity during the alleged period of disability. 20 C.F.R. §

8    404.1512(c).  The ALJ must resolve conflicts and ambiguities in the medical evidence and

9    determine credibility.  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

10   The record shows that the ALJ heard and considered Plaintiff's testimony at the

11   hearing.  The ALJ specifically stated at the hearing that Dr. Belzer was in attendance as a

12   medical advisor, in compliance with this Court's remand.  (Tr. at p. 271).

13   The ALJ found that Plaintiff did not sustain her initial burden of proof regarding an

14   alleged impairment and its severity prior to the expiration of her DLI.  The ALJ pointed out

15   that the X-rays that allegedly supported Dr. Hudak's January 26, 2001 chart note were not

16   part of the administrative record.  The ALJ also pointed out that Dr. Hudak did not reference

17   any back problems in the evaluations she conducted prior to January 2001. The ALJ further

18   noted that Plaintiff's chiropractic medical records showed a favorable response to

19   conservative treatment such as working out at a gym.  Plaintiff had multiple canceled,

20   rescheduled and missed chiropractic appointments as noted by the ALJ.[3]

21

22

23   [2]As discussed in Flaten, "[i]n a retrospective diagnosis case, a '[c]laimant is not
entitled to disability benefits unless he can demonstrate that his disability existed prior to the

24   expiration of his insured status.'" Id., 44 F.3d at n. 4.  A "retrospective diagnosis is a medical
opinion of the claimant's impairments which relates back to the covered period." Estok v.

25   Apfel, 152 F.3d 636, 638 (7th Cir. 1998).  "A retrospective diagnosis may be considered only
if it is corroborated by evidence contemporaneous with the eligible period."  Id., at 640.

26

27   [3]A chiropractor is not listed as an "acceptable medical source" but is listed in the
section on "other sources" from whom evidence may be considered to show severity of a

28   claimed impairment. 20 C.F.R. § 404.1513.

1    In reviewing the record in this case, the Court notes the following discussion set forth

2  in the Appeals Council Order of Remand:

3          The record is unclear regarding the severity of the claimant's
           musculoskeletal impairment.  After review of the evidence of
4          record, the Council concludes that the evidence is insufficient to
           assess the claimant's back impairment prior to December 31,
5          2000 (the claimant's date last insured).  The record reveals that
           the claimant was diagnosed with a possible herniated nucleus
6          pulposus at L4 in May 2000 (Tr. 128).  The record also reveals
           that a progress note dated January 26, 2001 indicated that X-rays
7          revealed severe degenerative disc disease and foraminal
           narrowing at L4-5, as well as foraminal narrowing at lumbar
8          levels L3 through S1 (Tr. 134).  While the record suggests that
           the claimant has a severe back impairment, it is unclear whether
9          the impairment was severe prior to December 31, 2000 (date last
           insured).  The evidence of record does not include the X-rays,
10         therefore, it is not clear when the X-rays were taken or what the
           radiographic  interpretation  revealed.  Therefore,  further
11         proceedings are necessary.

12  (Tr., at p. 228).

13    Plaintiff presented her own testimony at the hearing but no evidence that supported

14  a finding of a "severe" impairment based on determinable medical evidence.  Plaintiff in her

15  motion for summary judgment has discussed medical records that refer to assessments in

16  2001 and 2002.

17    Dr. Belzer testified that he had read the medical evidence submitted in the case and

18  that there was no evidence "dating back to ... December, 2000 of severe, objective evidence

19  of impairment."  (Tr. at pp. 280, 282).  Dr. Belzer's additional testimony that it was not

20  medically unreasonable that the findings on the chart note dated January 26, 2001 would

21  have been the same as of December 30, 2000 (id., at p. 284) was speculative.

22    If the ALJ needs to know the basis of the doctor's opinion, he has a duty to conduct

23  an appropriate inquiry.  Tidwell, 161 F.3d at 602.  In this case, however, the record shows

24  that Dr. Belzer was not the treating physician and had not examined the Plaintiff.  The date

25  of the X-rays was not provided.  Dr. Hudak had not referenced any back problems in the

26  evaluations she conducted prior to January 2001.  Plaintiff also had responded positively to

27  treatment in 2000 such as working out at a gym.

28

1    The ALJ is responsible for determining credibility, resolving conflicts in the medical

2    testimony, and resolving ambiguities.  <u>Andrews</u>, 53 F.3d at 1039.  Plaintiff did not satisfy her

3    burden of showing that she has a severe impairment or that she became disabled on or before

4    her DLI.  The Court concludes that the ALJ's findings are supported by the evidence.

5    **Accordingly**,

6    **IT IS ORDERED** that Plaintiff's motion for summary judgment (Doc. 6)  is denied.

7    **IT IS FURTHER ORDERED** that Defendant's cross-motion for summary judgment

8    (Doc. 7) is granted.

9    **IT IS FURTHER ORDERED** that Judgment shall be entered in accordance with this

10   Order.

11   DATED this 8th  day of March, 2006.

12

13

14

15

16

17

_____

18   Mary H. Murguia
     United States District Judge

19

20

21

22

23

24

25

26

27

28